[50 NYS3d 115]

In the Matter of Howard M. Adelsberg (Admitted as Howard Michael Adelsberg), an Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

Second Department, March 22, 2017

### APPEARANCES OF COUNSEL

*Mitchell T. Borkowsky*, Hauppauge (*Robert H. Cabble* of counsel), for petitioner.
*Howard Benjamin*, New York City, for respondent.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a petition dated July 1, 2015, containing five charges of professional misconduct. After a preliminary conference held on February 10, 2016, and a hearing conducted on April 19, 2016, the Special Referee sustained all charges, in a report dated August 12, 2016. The petitioner now moves to confirm the Special Referee's report and to impose such discipline as this Court deems just and proper. The affirmation in response submitted by the respondent's counsel requests that a public censure be imposed in view of the evidence presented in mitigation.

### The Petition

Charge one, as amended, alleges that the respondent, while in possession of funds belonging to other persons, incident to his practice of law, failed to make or maintain appropriate ledger books or similar required bookkeeping records for his attorney IOLA trust account, and failed to make accurate entries of all financial transactions in a ledger or similar record in the regular course of his practice, at or near the time of the act, condition, or event recorded, in violation of rule 1.15 (d) (1) and (2) of the Rules of Professional Conduct (22 NYCRR 1200.0) as follows:

1. At all relevant times, the respondent maintained an attorney trust account at JP Morgan Chase Bank, under account No. xxxxx5491, and denominated "Law Office of Howard M. Adelsberg Attorney Trust Account IOLA" (hereinafter IOLA account).

2. At all relevant times, the respondent maintained an operating account at JP Morgan Chase Bank, under account No. xxxxx6622 (hereinafter operating account).

3. By letter dated April 8, 2014, the petitioner provided the respondent with a copy of a dishonored check notification from the Lawyers' Fund for Client Protection, advising that IOLA check numbered 1061, for $24,229.85 (hereinafter subject check), drawn against the IOLA account, was dishonored when presented for payment on February 25, 2014, due to insufficient funds, the available balance being $22,229.85.

4. In the petitioner's April 8, 2014 letter, the respondent was asked to provide, within 20 days, an explanation of the circumstances that caused the subject check to be drawn against insufficient funds, as well as the following bank and bookkeeping records:

a. Records of all deposits in and withdrawals from the account, which specifically identify the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement; the names of all persons for whom the funds are or were held, and the names of all persons to whom such funds were disbursed;

b. All checkbooks and check stubs, bank statements, prenumbered cancelled checks (front and back), and duplicate deposit slips, for the six months preceding the date that the subject check was dishonored; and

c. The identity of the source or sources of the funds (i.e., what amount belongs to what client) that comprised the opening balance in the earliest banking statement provided.

5. By letter dated April 8, 2014, the respondent, by counsel, explained that the subject check related to a personal injury matter, identified as the Foy matter, and was made payable to a law firm as that firm's referral/participation fee in the Foy matter.

6. The respondent further explained in his April 8, 2014 letter that the insufficiency in the IOLA account on February 25, 2014, resulted from an error the respondent made on February 6, 2014, in an unrelated matter, the Sibaja matter, in which the respondent withdrew $4,872.05 for his legal fee in that matter. The respondent stated that he should have withdrawn only $2,872.05, and thus, he overdisbursed his legal fee in the Sibaja matter by $2,000, the amount of the deficiency on February 25, 2014.

7. On or about March 10, 2014, upon being notified of the dishonored check, the respondent deposited $2,100 into the IOLA account.

8. On March 12, 2014, the subject check was re-presented for payment and honored, leaving a balance in the IOLA account of $100.

9. With his April 8, 2014 letter, the respondent provided, among other things, a computer generated document which purported to be his "check register" for the IOLA account for the period July 8, 2011, through March 31, 2014; a copy of the closing statement for the Foy matter; and monthly bank statements with copies of cancelled checks, for the period September 1, 2012, through February 28, 2014.

10. The respondent did not provide the matters that comprised the opening balance ($105,793.18) on the September 2012 bank statement, the earliest bank statement he provided.

11. By letter dated June 11, 2014, in response to the petitioner's request for additional information, the respondent provided a partial, nonspecific description of the composition of the $105,793.18 opening balance on the September 2012 bank statement.

12. The respondent attributed $75,000 of that opening balance to a down payment he was entrusted with in a matter identified as the Mayerhoff to Herskovitz transaction, and the remainder to unspecified cases he handled for Verizon and advanced expenses from other unidentified clients.

13. With his June 11, 2014 letter the respondent provided a retainer and closing statement filed in court for the Foy matter; a closing statement for the Mayerhoff to Herskovitz matter; and a one-page schedule he referred to as an "Amount Transferred" sheet (hereinafter the amount transferred sheet) summarizing some of the electronic transfers from the IOLA account, which was not a contemporaneously made and maintained record for the IOLA account, but which was prepared for the petitioner's investigation.

14. The respondent's bank and bookkeeping records submitted with his April 8, 2014 and June 11, 2014 letters, including the check register and amount transferred sheet, do not corroborate or match the information contained on the closing statements for the Foy and Mayerhoff to Herskovitz matters.

15. The respondent's bank and bookkeeping records submitted with his April 8, 2014 and June 11, 2014 letters, including the check register and amount transferred sheet, do not corroborate or match the respondent's explanation for the insufficiency in the IOLA account leading to the dishonoring of the subject check.

16. The bank statements for the IOLA account showed that on February 6, 2014, two weeks prior to the issuance of the subject check (drawn February 19, 2014, and which was dishonored when presented for payment on February 25, 2014), $118,681 was transferred into the IOLA account from another, unidentified checking account at JP Morgan Chase Bank, bearing account No. xxxxx7220.

17. The respondent's check register described the $118,681 as relating to the "Sibaja Purchase" and "Settlement Proceeds."

18. The bank statements for the IOLA account showed that on February 6, 2014, there was an online disbursement of $3,000 from the IOLA account to the operating account, identified in the check register as "Interest Exp," but identified in the amount transferred sheet as "Fee earned in Sibaja."

19. The bank statements for the IOLA account showed that on February 6, 2014, there was an online disbursement of $4,872.05 to the operating account, identified in the check register as connected to the Sibaja matter, but not otherwise described as a legal fee. In the amount transferred sheet, this disbursement is referenced as "Fee earned in Sibaja, balance of Alden and Hoai Huu Nguyen matter." The records did not specify the portions of this amount attributable to the three matters which comprised the $4,872.05.

20. The bank statements for the IOLA account showed that on February 20, 2014, at or about the time that he drew the subject check, the respondent executed three online transfer deposits into the IOLA account, totaling $6,434.56. The three transfers were recorded in the check register as being executed February 19, 2014, the date the subject check was drawn. One transfer, from the operating account for $5,000, was described in the check register as "Bonus," but did not specify the matter or client it related to. The second transfer for $984.56, from the operating account, and the third transfer for $450, from a money market account with account No. xxxxx7230, were described in the check register as "Interest Exp," but did not further specify the clients or matters they related to.

21. The respondent's bank and bookkeeping records submitted with his April 8, 2014 and June 11, 2014 letters revealed deposits in and withdrawals from the IOLA account between September 1, 2012, and February 28, 2014, which are not accurately identified or described in the check register.

22. The respondent's bank and bookkeeping records submitted with his April 8, 2014 and June 11, 2014 letters revealed that between September 1, 2012, and February 28, 2014, the respondent regularly executed online banking transfers from the IOLA account to the operating account in denominations ranging from $100 to $4,872.05, totaling $62,321.08, which were not accurately identified or described in the check register.

23. The respondent failed to identify the source and description of deposits, and the clients or third parties for whom the funds were held, in the following deposits:

| | |
|---|---|
| 1/15/13 | $22,000 |
| 3/15/13 | $ 1,500 |
| 2/13/14 | $ 2,000 |
| 2/20/14 | $ 5,000 |
| 2/20/14 | $ 984.56 |
| 2/20/14 | $ 450 |

24. The respondent failed to render appropriate accounts, and records for, the following withdrawals or disbursements:

| | |
|---|---|
| 9/12/12 | $ 4,500 |
| 9/24/12 | $ 550 |
| 11/13/12 | $ 2,000 |
| 3/6/13 | $ 2,000 |
| 5/1/13 | $22,000 |
| 5/9/13 | $ 425 |
| 11/12/13 | $ 3,000 |
| 1/27/14 | $ 500 |
| 2/11/14 | $ 2,500 |
| 2/13/14 | $10,000 |

25. The respondent's check register recorded as "consulting income," "consultation fee," or "consultation," the following deposits:

| | |
|---|---|
| 1/15/13 | $ 22,000 |
| 2/25/13 | $ 601.87 |
| 7/12/13 | $225,482.98 |
| 2/10/14 | $ 20,000 |

26. The respondent's check register recorded as "interest expense" online transfers to his operating account the following withdrawals or disbursements:

| | |
|---|---|
| 3/14/13 | $1,500 |
| 8/5/13 | $2,500 |
| 10/4/13 | $1,500 |
| 10/7/13 | $4,000 |
| 10/9/13 | $2,000 |
| 10/23/13 | $2,500 |
| 11/25/13 | $2,000 |
| 12/9/13 | $4,000 |
| 1/20/14 | $2,000 |
| 2/6/14 | $3,000 |
| 2/20/14 | $ 984.56 |

27. The respondent's check register recorded as "bonus" the following withdrawals or disbursements:

| | |
|---|---|
| 10/7/13 | $30,962.10 |
| 11/11/13 | $ 3,000 |
| 12/12/13 | $ 3,109.35 |
| 12/13/13 | $ 765 |
| 12/13/13 | $ 1,271.90 |
| 12/16/13 | $ 985 |
| 12/16/13 | $ 12.75 |
| 12/17/13 | $ 256 |
| 1/17/14 | $ 2,000 |
| 2/11/14 | $ 2,500 |
| 2/11/14 | $ 2,500 |
| 2/20/14 | $ 5,000 |

28. On August 7, 2014, the respondent appeared and gave sworn testimony at an examination under oath concerning the subject check and his management of the IOLA account. The respondent testified, in pertinent part, that he did not maintain any records for the IOLA account other than the check register.

29. During the examination under oath on August 7, 2014, the respondent was requested to submit additional records and information sufficient to reconcile the IOLA account.

30. The respondent failed to submit additional records or to adequately explain the discrepancies in the IOLA account and his bookkeeping records.

Charge two alleges that the respondent failed to make available to the petitioner in its disciplinary investigation the financial records required to be made and maintained for the IOLA account, in violation of rule 1.15 (i) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

31. The factual specifications of charge one, paragraphs 1 through 30, are repeated and realleged as if fully set forth herein.

Charge three alleges that the respondent, while in possession of funds belonging to other persons, incident to his practice of law and as a fiduciary, misappropriated such funds in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

32. The factual specifications of charge one, paragraphs 1 through 30, are repeated and realleged as if fully set forth herein.

33. On July 12, 2013, the respondent received and deposited $225,000 into the IOLA account in connection with his client in the Foy matter.

34. Between July 12, 2013, and January 17, 2015, the respondent disbursed from the IOLA account $33,500 in connection with the Foy matter, as follows:

| 7/29/13 | Online transfer to operating account | $ 5,000 |
| 8/5/13 | Online transfer to operating account | $ 2,500 |
| 12/5/13 | Check No. 1113 | $18,000 |
| 12/5/13 | Check No. 1114 | $ 2,000 |
| 12/9/13 | Online transfer to operating account | $ 4,000 |
| 1/17/14 | Check No. 1124 | $ 2,000 |

35. Between July 29, 2013, and January 17, 2014, the balance in the IOLA account intermittently fell below the amount he was required to maintain and preserve in connection with the Foy matter as follows:

| Date | Foy Amount | Bank Balance |
| --- | --- | --- |
| 10/31/13 | $217,500 | $209,849.12 |
| 11/29/13 | $217,500 | $209,060.98 |
| 12/31/13 | $193,500 | $178,660.98 |
| 1/31/14 | $191,500 | $173,160.98 |

Charge four, as amended, alleges that the respondent, while in possession of funds belonging to other persons, incident to his practice of law and as a fiduciary, misappropriated such funds in violation of rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

36. The factual specifications of charge one, paragraphs 1 through 30, are repeated and realleged as if fully set forth herein.

37. On January 29, 2013, the respondent received and deposited into the IOLA account $111,000 in connection with a matter identified as the Turtle Bay/Madden matter.

38. The respondent made the following disbursements in connection with the Turtle Bay/Madden matter, totaling $159,030, as follows:

| 2/1/13 | Check No. 1091 | $ 28,030 |
| 2/1/13 | Check No. 1092 | $ 20,000 |
| 2/25/13 | Check No. 1098 | $111,000 |

39. By February 25, 2013, the respondent overdisbursed the Turtle Bay/Madden matter in the amount of $48,030, thereby invading funds being held in the IOLA account on behalf of other clients or matters.

Charge five alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, inter alia, by failing to account for the funds held in his IOLA account and employing improper bookkeeping practices for that account, in violation of rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0) as follows:

40. The factual specifications of charge one, paragraphs 1 through 30; charge two, paragraph 31; charge three, paragraphs 33 through 35; and charge four, paragraphs 36 through 39, are repeated and realleged as if fully set forth herein.

In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained all charges. Accordingly, the petitioner's motion to confirm the findings of the Special Referee is granted.

In determining an appropriate sanction to impose, the respondent seeks consideration of certain factors in mitigation, including his unblemished disciplinary record, the evidence of his numerous pro bono and volunteer services to charitable organizations and his community, as well as the evidence of his good character. Here, the respondent's misconduct was not an isolated incident, but reflects a longstanding course of conduct. The Special Referee found, and we agree, that the respondent's conduct was "not only poor record-keeping, but virtually total non-compliance with the Rules of Professional practice concerning the maintenance of an IOLA account." While the respondent has now made efforts to comply with his obligations under rule 1.15 of the Rules of Professional Conduct (22 NYCRR 1200.0), it is noteworthy that such remedial efforts were not

made until his conduct came under scrutiny. Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of one year (*see Matter of Schacht*, 80 AD3d 157 [2010]).

ENG, P.J., MASTRO, DILLON, BALKIN and HALL, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Howard M. Adelsberg, admitted as Howard Michael Adelsberg, is suspended from the practice of law for a period of one year, commencing April 21, 2017, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than January 22, 2018. In such application (*see* 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred and suspended attorneys (*see* 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (a), and (4) otherwise properly conducted himself; and it is further,

Ordered that the respondent, Howard M. Adelsberg, admitted as Howard Michael Adelsberg, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (*see* 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Howard M. Adelsberg, admitted as Howard Michael Adelsberg, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Howard M. Adelsberg, admitted as Howard Michael Adelsberg, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify

to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).